NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2554
_____

SUSAN E. BRITTING,
                              Appellant
v.

SECRETARY, DEPARTMENT OF VETERANS AFFAIRS
_____

On Appeal from the United States District Court
for the Middle District of  Pennsylvania
District Court  No. 1-08-cv-01747
District Judge: The Honorable A. Richard Caputo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 25, 2011

Before: McKee, *Chief Judge*, and SMITH, *Circuit Judge,*
and STEARNS, *District Judge*[*]

(Filed: February 1, 2011)
_____

OPINION
_____


SMITH, *Circuit Judge*.

_____

[*]  The Honorable Richard G. Stearns, United States District Judge for the United States
District Court of Massachusetts, sitting by designation.

Susan E. Britting began working as a medical transcriptionist for the Department of Veterans Affairs (VA) in its Lebanon, Pennsylvania facility in 2002. Years before, Britting had been diagnosed with irritable bowel syndrome (IBS). Around May of 2007, Britting's IBS flared up, resulting in an increase in a variety of gastrointestinal symptoms. At about this same time, Britting's performance as a transcriptionist deteriorated, adversely affecting her accuracy rate and the number of lines she was able to transcribe per shift. By mid-June, Britting's accuracy rate had fallen from 92% (a "Fully Successful" achievement rate) to 85%. As a result, Jodi Moyer, Britting's supervisor, placed Britting on a Performance Improvement Plan, which afforded Britting 90 days to demonstrate an acceptable level of work. The Plan also provided for biweekly meetings between Moyer and Britting to discuss her work performance.

Within days, Britting provided Moyer with a letter from her physician, Dr. Messmer, which confirmed Britting's affliction with IBS and her frequent need to use the restroom. In an effort to accommodate that need, Britting's work station was moved closer to the restroom. At about this same time, Moyer advised Britting that, because of her diminished accuracy, Moyer would be reviewing Britting's transcriptions before releasing them to the medical care provider.

In mid-July, despite Moyer's directive, Britting herself released several documents to the medical provider before Moyer could complete her review.

Britting did this again in August, violating Moyer's order a second time. On September 4, 2007, Britting received notice of a proposed three-day suspension based on her persistent failure to follow Moyer's directive. Two days later, Britting again released a transcribed report without Moyer's approval. Within a week, Britting received notice that the proposed three-day suspension had been replaced with a fifteen-day suspension. An assessment of her transcription revealed an "[o]verall monthly accuracy average of 83%," demonstrating that her accuracy rate continued to deteriorate.

The interim director of the Lebanon facility reviewed a report that considered whether Britting's suspension was warranted in light of the twelve factors set out in *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 306-07 (1981). The report noted that Britting's inability to follow the basic instruction not to release her work before it had been reviewed had resulted in serious transcription errors. Furthermore, Britting's lack of accuracy required the supervisor to review all of her work, thereby reducing the department's overall productivity.

On October 15, 2007, Britting received notice of the VA's intent to terminate her employment. Although a vacancy existed at the time in the file room, management rejected such a transfer because the job required a high degree of accuracy and was incompatible with Britting's ability. Britting's termination became effective on November 27, 2007. Britting challenged her suspension and

3

termination, but the Merit System Protection Board upheld the VA's actions. Britting then filed a complaint in the United States District Court for the Middle District of Pennsylvania. Britting claimed that she was discriminated against on the basis of her disability, thereby violating the Rehabilitation Act, 29 U.S.C. § 794(a).[1] She also sought judicial review of the VA's decision to suspend and to terminate her employment under 5 U.S.C. § 7703(b)(2).

At the time of Britting's 2007 termination, the Americans with Disabilities Act (ADA) was interpreted narrowly and the standard for determining whether an individual had a disability included consideration of whether the impairment had a permanent or long-term impact. The ADA Amendments Act of 2008 (ADAAA), however, rejected this narrow interpretation and reinstated the broad scope of protections available under the ADA. P.L. 110-325, §§ 2 and 3, 122 Stat. 3553, 3556 (Sept. 25, 2008). In amending the ADA, Congress set forth several rules of construction governing the definition of disability, including that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* § 3(4)(D), codified at 42 U.S.C. § 12102(4)(D).

The VA moved for summary judgment, contending that Britting could not establish a disability under the narrow interpretation of that term that prevailed at

---

[1] The Rehabilitation Act specifies that the "standards used to determine whether this section has been violated . . . shall be the standards applied" under the Americans with Disabilities Act. 29 U.S.C. § 794(d).

the time she was terminated. Britting argued to the contrary. In addition, she asserted that the ADAAA was retroactively applicable. The District Court concluded that the ADAAA was not retroactively applicable and that Britting was unable to establish a disability under the more demanding standard applicable at the time of her termination. The District Court also concluded that there was substantial evidence to support the Merit System Protection Board's decision. This timely appeal followed.[2]

We agree with the District Court that the ADAAA is not retroactively applicable. In deciding whether a statute is retroactively applicable, the Supreme Court has instructed that the "first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). If Congress's intent is not clear, "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* Nothing in the ADAAA's text expressly prescribes that the

---

[2] The District Court exercised jurisdiction over the Rehabilitation Act claim under 28 U.S.C. § 1331 and over the Merit Systems Protections Board appeal under 5 U.S.C. § 7703(b)(2). Appellate jurisdiction exists under 28 U.S.C. § 1291. "We exercise plenary review over the District Court's grant of summary judgment" and "apply the same standard that the District Court should have applied." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (internal citations omitted).

statute is retroactively applicable.  Furthermore, in expanding the definition of disability, the ADAAA clearly increased the VA's liability for past conduct.  As a result, we conclude that the ADAAA cannot be applied retroactively.[3]

Britting argues that the new statute is nevertheless applicable because it effects a waiver of sovereign immunity.  As a result, she contends that it is a jurisdictional statute, which (as *Landgraf* acknowledged) is a kind of legislation that is "regularly applied" retroactively.  511 U.S. at 274.  The *Landgraf* Court's acknowledgment, however, was qualified:

> Application of a new jurisdictional rule usually "takes away no substantive right but simply changes the tribunal that is to hear the case."  Present law normally governs in such situations because jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties[.]"

*Id.* (citations omitted).  By using the term "usually," *Landgraf* signaled that there may be instances where a jurisdictional statute may not be applied retroactively.  Such an instance may arise where the new jurisdictional statute affects a party's substantive rights or obligations.  *Id.*  Indeed, the Court concluded in *Hughes*

---

[3]  We are not alone in this conclusion.  Our sister circuits, which have considered the question, have uniformly concluded that the ADAAA is not retroactively applicable.  *See Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x. 85, 87 n.2 (2d Cir. 2010); *Nyrop v. Indep. Sch. Dist. No. 11,* 616 F.3d 728, 734 n.4 (8th Cir. 2010); *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 34 n.3 (1st Cir. 2009); *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009); *Fredricksen v. United Parcel Serv.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009); *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 940-42 (D.C. Cir. 2009); *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565-67 (6th Cir. 2009); *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009).

*Aircraft Co. v. United States,* 520 U.S. 939 (1997), that a new statute, which eliminated an affirmative defense in *qui tam* actions, "create[d] jurisdiction where none previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well. Such a statute, even though phrased in 'jurisdictional' terms, is as much subject to our presumption against retroactivity as any other." *Id.* at 951. Thus, we conclude that the ADAAA, even though it may be jurisdictional in nature with regard to the VA, is not retroactively applicable because it affects the substantive rights of the parties.

Having concluded that the ADAAA is not retroactively applicable, we turn to Britting's contention that the District Court erred in its determination that she did not establish a disability under the more demanding pre-ADAAA standard. We conclude that the District Court did not err. Britting confirmed that her IBS was episodic in nature and did not afflict her every day.

Finally, Britting contends that her suspension and termination are not supported by substantial evidence. Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bradley v. Veterans Admin.*, 900 F.2d 233, 234 (Fed. Cir. 1990) (quoting *Consol. Edison Co. v. Labor Bd.*, 305 U.S. 197, 229 (1938)). Our review of the record reveals that there is substantial evidence to support the VA's actions.

For the reasons set forth above, we will affirm the judgment of the District Court.